IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID C. ROBINSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 04-1401GMS |
| ) | |
| v. ) | |
| ) | |
| GOLDEN RULE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## JOINT STATUS REPORT

The parties submit this joint status report in anticipation of the April 5, 2005 scheduling conference.

### I. Jurisdiction and Service

Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §1332(a)(1). All parties are subject to the Court's jurisdiction, and none remain to be served.

### II. Substance of the Action

**Plaintiff:** This action seeks, among other relief, a declaration that the defendant Golden Rule Insurance Company must pay health insurance benefits to the plaintiff David C. Robinson under the parties' interim insurance contract, and with respect to health care services rendered in September and October of 2003.

#### A. The Interim Insurance Contract

In August 2003 Mr. Robinson and his wife submitted to Golden Rule a written application for health insurance. The application was a form application prepared by Golden Rule and supplied by the company to the Robinsons.

118979

As part of the application process, Golden Rule required the Robinsons to make simultaneous payment of $268.50. Golden Rule represented that this amount constituted an initial monthly premium. The application also set forth the parties' express agreement that Golden Rule's acceptance of this *initial* premium payment would not create any interim contract of insurance, pending its decision to issue or decline a final and formal contract.

On or about September 15, 2003, however, Golden Rule withdrew funds from the Robinsons' bank account in an additional amount of $268.50. Golden Rule took these funds as payment of a second monthly insurance premium, subsequent to the initial premium that the Robinsons tendered with their application. But in doing so, Golden Rule acted unlawfully; the Robinsons never consented to the taking of any second premium payment, and Golden Rule had no legal right to the money.

By affirmatively limiting the agreement set forth in the application to the Robinsons' payment of an "initial premium", Golden Rule created a reasonable expectation that its taking or acceptance of subsequent premium payments would give rise to an insurer-insured relationship. At a minimum, Golden Rule's unauthorized taking of the second premium payment created ambiguity as to the formation of such a relationship. In either case, Delaware law views Golden Rule's conduct as creating an interim insurance contract. See Novellino v. Life Ins. Co. of N. Amer., 216 A.2d 420 (Del. 1966).

### B. The Interim Contract's Cancellation Clause

As outlined above, Golden Rule's unauthorized taking of the second and subsequent premium payment created an interim contract of insurance. A reasonable purchaser of consumer insurance products would expect that interim contract to employ, to the extent applicable, the same terms as Golden Rule would have supplied had it issued a final and formal insurance

118979                                        2

contract. Those terms consist of Golden Rule's policy form GRI-PA-20-07. (In fact, Golden Rule ultimately approved Mrs. Robinson's insurance application, and issued to her this precise policy form.)

Under the subject policy form, Golden Rule could cancel its insurance on thirty-one days' notice. Because this cancellation clause applies to Mr. Robinson's interim insurance contract with Golden Rule, the interim contract could likewise be canceled only on thirty-one days' notice. Moreover, public policy must prohibit the cancellation of health insurance contracts without notice; and Golden Rule's duty of good faith and fair dealing (part of its interim contract with Mr. Robinson) likewise precludes a cancellation without warning.

### C. The September 2003 Cardiac Event

On or about September 23, 2003, Golden Rule forwarded correspondence to Mr. Robinson advising that it had determined not to insure him under any final and formal insurance contract (as opposed to the already existing interim insurance contract). Prior to sending that letter, Golden Rule had represented to Mr. Robinson in writing that in the event it determined not to issue a final and formal contract, it would refund all premium payments previously made by him. Notwithstanding this representation, Golden Rule ultimately refunded to Mr. Robinson less than half of the premium paid by him in connection with his application for insurance (as opposed to that part of the application relating to his wife). Instead, Golden Rule kept the balance of Mr. Robinson's premium payments, apparently for the purpose of applying that balance against insurance premiums not yet due and owing with respect to Mrs. Robinson's insurance. Golden Rule took these actions unilaterally, and without the Robinsons' consent.

On September 27, 2003, Mr. Robinson suffered a heart attack. During the months of September and October 2003, he incurred medical expenses in excess of $118,000 for care made necessary by the heart attack.

The substance of Mr. Robinson's case, then, is this. The parties agreed in writing that the taking of an *initial* premium would not create any interim insurance. Acting unlawfully and without the Robinsons' consent, Golden Rule then made an unauthorized withdrawal from the Robinsons' bank account of a *second* premium to which the company was not entitled. Under Novellino and other cases addressing the creation of interim insurance contracts, Golden Rule's conduct created such an interim contract.

Based on the doctrine of reasonable expectations, the insurer's duty of good faith and matters of public policy, the interim insurance contract could not be canceled without prior notice. Rather, it could only be canceled on thirty-one days' notice -- meaning that it was still in effect at the time of Mr. Robinson's heart attack, and throughout September and October 2003. Moreover, Golden Rule's failure to refund fully Mr. Robinson's initial premium payment (in violation of the parties' agreement) estops Golden Rule from canceling the interim contract for so long as it continues in the breach.

**Defendant**:

    A.    **No Interim Contract Of Insurance Arose Between Plaintiff And Golden Rule.**

Under Delaware law, an insurer may be bound by an interim insurance contract during the application process. "However, this occurs only when the receipt or other paper delivered initially to the insured so provides." Novellino v. Life Ins. Co. of North America, 216 A.2d 420, 422 (Del. 1966) (emphasis added). The sole provision in the application upon which Plaintiff relies states: "[T]his application and the payment of the initial premium do not give me

immediate coverage." Such language does not provide for interim insurance coverage under Delaware Law, especially when considered, as it must be, along with the totality of communications from Golden Rule to Plaintiff during his application process.

In conjunction with submitting his application for insurance to Golden Rule, Plaintiff received from Golden Rule, and acknowledged receipt of, a form titled, in part, "CONDITIONS PRIOR TO COVERAGE (APPLICABLE WITH OR WITHOUT THE CONDITIONAL RECEIPT)." Therein, Golden Rule informed Plaintiff: "NO INSURANCE WILL BECOME EFFECTIVE UNLESS ALL SIX CONDITIONS PRIOR TO COVERAGE ARE MET." Among these six conditions included the following:

> 1. The application is completed in full and is unconditionally accepted and approved by Golden Rule Insurance Company (Golden Rule) at its Home Office or Indianapolis Office.
>
> [...]
>
> 6. The certificate is: (a) issued by Golden Rule exactly as applied for within 45 days from date of application; (b) delivered to the proposed insured; and (c) accepted by the proposed insured.

Id. Also, Plaintiff's insurance application, signed on August 3, 2003, stated: "There is no coverage until approved in writing by Golden Rule." None of the above conditions, among others, was satisfied. Because interim insurance only arises "when the receipt or other paper delivered initially to the insured so provides," and the "receipt or other paper" Golden Rule delivered to Plaintiff in no way provides for interim insurance coverage, Plaintiff's claims must be dismissed. Novellino at 422-423.

Notwithstanding the collection by Golden Rule of the second $268.50 payment from Plaintiff and his spouse's joint PNC account, Plaintiff had no reasonable expectation that such collection gave rise to an interim insurance contract. First, Golden Rule's collection of the

second $268.50 payment was in accordance with the terms of the application, wherein Plaintiff and his spouse did "authorize Golden Rule to initiate debit entries to the account indicated below [the Plaintiff and his spouse's PNC joint account]" during the application process.

Second, written communications from Golden Rule to Plaintiff, both before and after Golden Rule collected the second payment, entirely negate any reasonable expectation by Plaintiff of interim insurance coverage during the application process. Indeed, days after receiving Plaintiff's application, Golden Rule wrote to Plaintiff on August 14, 2003 and stated: "Please note: We will collect monthly payments from your account while processing your application." About one month later, Golden Rule collected the second $268.50 payment. Then, in a letter dated September 16, 2005 to Plaintiff, Golden Rule stated:

> It has been more than 45 days since you applied for insurance with us. We wanted to let you know that we are still working on your application. We hope to make a final decision soon.
>
> If we approve coverage, it will be effective on either the date requested on your application or the date we received it, whichever is later.
>
> If we do not approve coverage, we will refund all payments made.

The September 16, 2003 letter made no provision for interim insurance and clearly advised Plaintiff as to the pending status of his application, without any effective coverage.

By letter dated September 23, 2003, Golden Rule concluded the application process and informed Plaintiff that: "We are unable to provide coverage for you because we did not receive the requested medical information needed to determine insurability." Golden Rule also enclosed with this letter a refund check. Based on the totality of communications between Plaintiff and Golden Rule, Golden Rule neither created, nor could Plaintiff reasonably expect, interim insurance coverage and, accordingly, Plaintiff's claims should be dismissed.

118979                                    6

### III. Identification of Issues

The central issues are 1) whether the parties' conduct created an interim contract of insurance; 2) whether, if such a contract arose, it was in effect throughout the period during which Mr. Robinson suffered his heart attack and its aftermath; and 3) damages.

### IV. Narrowing of Issues

The parties believe that coverage issues can be substantially narrowed, if not altogether resolved, by summary judgment.

### V. Relief Sought

Mr. Robinson seeks recovery of approximately $118,000 as compensatory damages, exclusive of punitive damages.

### VI. Amendments of Pleadings

The parties propose an *April 29, 2005* deadline for amendment of pleadings.

### VII. Joinder of Parties

The parties propose an *April 29, 2005* deadline for the joinder of parties.

### VIII. Discovery

#### A. Contemplated Discovery, Etc.

**Plaintiff**: Mr. Robinson contemplates discovery on his bad faith claim, including written discovery, depositions of one or more designees of Golden Rule under Rule 30(b)(6), and perhaps other depositions. The extent to which he requires discovery on other issues of liability may depend on the fate of one or more summary judgment motions.

This specification is made without prejudice, particularly with respect to discovery whose necessity becomes apparent as the case proceeds. Mr. Robinson also notes that the parties have

not yet made their initial disclosures under Rule 26(a); Golden Rule's disclosures may show the need for other discovery.

**Defendant**: Golden Rule contemplates written discovery requests directed to the Plaintiff, third-party document discovery as to Plaintiff's alleged damages, and deposition notices directed to the Plaintiff and his spouse. Golden Rule reserves the right to seek additional discovery as its investigation continues, facts are discovered and issues develop.

### B. Discovery Deadline

The parties propose that discovery be initiated so as to be completed by *December 30, 2005*.

### IX. Estimated Trial Length

The parties estimate that trial will take three days.

### X. Jury Trial

Mr. Robinson has demanded trial by jury.

### XI. Settlement

The parties are engaged in ongoing settlement discussions, which they hope to conclude shortly. The prospects for settlement will be better known as those discussions mature. The parties agree, however, that referral of the case to Magistrate Judge Thynge for mediation is appropriate.

***

The parties have conferred as to each of the matters addressed above.

/s/ Kevin W. Goldstein
Samuel J. Arena, *admitted pro hac vice*
Kevin S. Goldstein, No. 2967
Jeffrey D. Grossman, *admitted pro hac vice*
Stradley, Ronon, Stevens & Young, LLP
300 Delaware Avenue, Suite 1018
Wilmington, DE 19801

Attorneys for defendant
Golden Rule Insurance Company

/s/ John S. Spadaro
John S. Spadaro, No. 3155
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19805

Attorneys for plaintiff
David C. Robinson

March 29, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID C. ROBINSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 04-1401GMS |
| ) | |
| v. ) | |
| ) | |
| GOLDEN RULE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Kevin W. Goldstein
300 Delaware Avenue
Suite 1018
Wilmington, DE 19801

In addition, I certify that the same party was served with the document by hand delivery at the address shown.

                                              MURPHY SPADARO & LANDON

                                              /s/ John S. Spadaro
                                              John S. Spadaro, No. 3155
                                              1011 Centre Road, Suite 210
                                              Wilmington, DE 19805
                                              (302) 472-8100

March 29, 2005                             Attorneys for plaintiff
                                              David C. Robinson

118987